**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MATTHEW B. ROBINSON,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 3:10-CV-2496-M** |
| | § | |
| **CITY OF GARLAND, TEXAS, et. al,** | § | |
| **Defendants.** | § | **Pretrial Management** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated July 21, 2013 (doc. 56), this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint*, filed March 19, 2015 (doc. 99), and *City of Garland's Motion to Dismiss Plaintiff's Second Amended Complaint*, filed March 25, 2015 (doc. 101). Based on the relevant filings and applicable law, the City's motion should be **DENIED,** and the Officers' motion should **GRANTED in part and DENIED in part**.

## I. BACKGROUND

On December 8, 2010, Matthew B. Robinson (Plaintiff) filed suit under 42 U.S.C. § 1983 against Officers Billy J. Ivy, Kevin Ross, Bryan Clement, John Guthrie, and Joshua Kirby and Detective Craig Godwin (Officers) and the City of Garland, Texas (City). (doc. 1 at 1-3.)[1] He alleges use of excessive force and failure to intervene in violation of the Fourth Amendment; conspiracy; unreasonable seizure and continued prosecution in violation of the Fourth Amendment—or in the alternative Fourteenth Amendment; and municipal liability. (doc. 96 at 11-21.)

Plaintiff contends that at approximately 10:30 p.m. on July 24, 2010, Officers arrived at his

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

home to execute a valid arrest warrant. (*Id*. at 4.) Officers surrounded the house, disabled the front porch light, banged on the front door, and identified themselves. (*Id*. at 4-5.) Plaintiff's fiancée opened the front door for Officers, who had their weapons drawn. (*Id*. at 5.) Godwin and an unidentified individual stayed with Plaintiff's fiancée in the living room, while Ivy, Ross, Clement, and Guthrie entered Plaintiff's bedroom and arrested him. (*Id*.) Plaintiff contends that "[a]s soon as Plaintiff was handcuffed, the officers began taking turns kicking and punching him across his entire body, while one officer trained a rifle at his head." (*Id*.) After several minutes, he was taken outside of the house, where "approximately 4-5 officers . . . . alternated between kicking, punching, and beating him." (*Id*. at 5-6.) "Officers even straddled his back while [he] remained down in the grass, covered in blood and sweat." (*Id*. at 6.) According to Plaintiff, "[h]e did not resist." (*Id*.) He repeatedly cried out that Officers were hurting him and pleaded with them to stop. (*Id*.)

After approximately ten minutes, one of the officers noticed Plaintiff's neighbor watching the incident and asked, "Did you see him try to get away?" (*Id*. at 7.) Plaintiff was then taken to the emergency room at Baylor Medical Center – Garland (Baylor), where he was prescribed pain medication for his head injuries and hand contusion. (*Id*.) He was then taken to Garland Jail. (*Id.*)

After his arrest, Plaintiff alleges that "in an effort to justify their actions and to cover up their violations of [his] constitutional rights, Defendants caused [him] to be charged with [the additional charge of] Resisting Arrest, a misdemeanor offense, by alleging that [he] continually thrashed about, and that he resisted their attempts to handcuff him." (*Id.* at 8.) Even after the underlying criminal charges that prompted his arrest were resolved, Plaintiff had to deal with the pending resisting arrest charge. (*Id*. at 13.) It was ultimately dropped by the Dallas County District Attorney's Office three and one half years after his arrest. (*Id*. at 8.)

Plaintiff contacted the Federal Bureau of Investigation (FBI) on or about July 27, 2010, to report Officers' excessive force. (*Id*. at 8.) The FBI interviewed several eyewitnesses, the treating physician at Baylor, Officers, and other unidentified City and Garland Police Department personnel. (*Id*. at 16-17.) The treating physician at Baylor allegedly reported to the FBI that he could not remember treating Plaintiff, but:

> he was not surprised he could not recall his treatment of Plaintiff because [Garland Police officers] bring in numerous arrestees who have all allegedly resisted arrest and sustained visible injuries . . . [which are] commonplace in the Baylor – Garland emergency room.

(*Id.* at 17.)

Officers and the City move to dismiss this action, and the motions are now ripe for recommendation.

## II. RULE 12(b)(6) STANDARD

Defendants move to dismiss this case pursuant to Rule 12(b)(6). (docs. 99, 101.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).[2]

[2] "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Officers and the City do not rely on any matters outside of the pleadings in support of their motion to dismiss.

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly,* 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

## III. CITY OF GARLAND'S MOTION TO DISMISS

The City contends that Plaintiff failed to state enough facts to allege a cause of action for

municipal liability under§ 1983. (doc. 101 at 14-15.)

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Social Servs*., 436 U.S. 658, 690–91 (1978). The plaintiff must show an "underlying claim of a violation of rights" as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (citations omitted); *accord Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) ("A plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom.") (citation and internal quotation marks omitted).

**A. <u>Official Policy or Custom</u>**

The City first argues that Plaintiff has failed allege a custom or policy or that the City showed deliberate indifference in adopting that policy. (doc. 101 at 9-10) (citation omitted).

"Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). For a facially constitutional policy, the plaintiff must

demonstrate that the policy was promulgated with deliberate indifference to known or obvious unconstitutional consequences. *Piotrowski v. City of Houston*, 237 F.3d 567, 579-80 (5th Cir. 2001); *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability. *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

Here, Plaintiff alleges that:

> the [Garland Police Department] had *a policy or custom of tolerating the use of excessive force* by its police officers, as demonstrated by the participation of a group of police officers in Plaintiff's beating; the pattern of prior similar incidents of abusive police conduct; the inadequacy of investigations into incidents of alleged excessive force; the lack of discipline for incidents of excessive force; and the lack of supervision and reporting procedures to monitor the use of force by police officers.

(doc. 96 at 14-15) (emphasis added). The City contends that "Plaintiff's allegations of a 'pattern' consists of a list of six lawsuits – wholly lacking in detail – filed against the City over the past fifteen years." (doc. 101 at 11.) Of the cases identified, "three cases . . . were dismissed by the Court on summary judgment and one case . . . was abandoned by the Plaintiff without explanation . . . . [and] at least two cases . . . involve cases where the officer(s) involved was/were terminated." (*Id*.) According to the City, "Plaintiff's mere allegations of prior 'similar' cases, without detail, are insufficient to establish a custom or policy." (*Id*. at 8.)[3]

---

[3] The City also argues that "the Fifth Circuit has expressly found that even twenty-seven complaints over a four year period were not sufficient to establish a custom or practice" and that "the Fifth Circuit found no custom or practice based on eleven incidents." (doc. 101 at 10-11) (citing *Peterson*, 588 F.3d at 851 and *Pineda*, 291 F.3d at 325). The Fifth Circuit's decisions in *Peterson* and *Pineda* relied on the failure of the summary judgment evidence under the specific facts of the cases, rather than creating a bright-line rule for the number of incidents required.

Here, the complaint describes more than a list of similar cases. In addition to Plaintiff's alleged beating on July 24, 2010, it identifies statements by a Baylor emergency room doctor during an FBI investigation that "[Garland Police officers] bring in numerous arrestees [to Baylor] who have all allegedly resisted arrest and sustained visible injuries" to such a great extent that "[he] sees the same situations over and over again." (doc. 96 at 17.) The doctor's alleged inability to specifically remember treating Plaintiff because of his observations of "numerous arrestees" under similar circumstances is sufficiently factually specific to support an inference of a widespread custom or policy by the Garland Police Department. *Compare Davenport v. City of Garland*, No. 3:09–CV–798–B, 2010 WL 1779620, at *2–3 (N.D. Tex. Apr. 9, 2010), *adopted by* 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010) (finding mere allegations that "the use of excessive force . . . is so common and well known . . . that it constitutes a custom that fairly represents official policy" were "conclusions, unsupported by facts, [that were] not entitled to the presumption of truth"); *see also Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citation and internal quotation marks omitted). Because the Court must accept his factual allegations as true and view them in the light most favorable to him at this stage of the proceedings, Plaintiff has sufficiently alleged "[a] persistent, widespread practice of [the Garland Police Department], which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *See Webster*, 735 F.2d at 841.

**B. <u>Actual or Constructive Knowledge</u>**

To satisfy the second element, Plaintiff must adequately plead that "actual or constructive knowledge of a custom [is] attributable to the governing body of the municipality or to an official to

whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542 (brackets omitted) (quoting *Webster*, 735 F.2d at 842). Liability attaches only when a final policymaker (as distinguished from a final decisionmaker), who has "the responsibility for making law or setting policy in any given area of a local government's business," establishes the municipal policy with respect to the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Bolton v. City of Dallas*, 541 F.3d 545, 548–49 (5th Cir. 2008) (per curiam) ("Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental . . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.") (citations omitted); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

Plaintiff alleges that "as a policymaker, the City Council and/or [Chief of Police] Mitch Bates was deliberately indifferent to the known and obvious risk that the policy or custom described herein of tolerating the use of excessive force by [Garland] police officers would lead to the deprivation of its citizens' . . . Fourth Amendment right to be free from the use of excessive force." (doc. 96 at 21.) He points to six excessive force cases that prompted litigation against the City "to illustrate the custom or practice of the City in accepting and ratifying the use of unnecessary and unreasonable force." (*Id*. at 15.) He also notes that since the incident on July 24, 2010, the FBI has been in contact with the City and its attorneys as part of its investigation of the use of excessive force, but that neither the City nor the Garland Police Department have investigated the incident. (*Id*. at 17-18.) Plaintiff has sufficiently alleged actual or constructive knowledge against the City. Because he has alleged that the policymakers acted with deliberate indifference and provided a sufficient factual basis to support his

allegations, Plaintiff has pleaded sufficient facts to "raise [his] right to relief above the speculative level." See *Twombly*, 550 U.S. at 555.

**C. <u>Moving Force</u>**

The City argues that Plaintiff has not properly pleaded causation. (doc. 101 at 12.)

The third element requires that Plaintiff adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Here, Plaintiff has alleged that "[t]he City's policy of tolerating its police officers' use of excessive force was the 'moving force' behind the violation of Plaintiff's constitutional rights." (doc. 96 at 20.) He contends that Officers "did not expect that the internal affairs department or any supervisor would sustain an excessive force complaint against them," so they "feared no adverse

consequences to themselves as a result of [their] reprehensible conduct." (*Id*.) Additionally, Plaintiff has alleged that after a circuit judge criticized the training of Garland Police Department officers in two separate excessive force cases, the City was on notice but failed to adequately train its officers. (*Id*. at 19-20.) The City contends that Plaintiff has not met his burden of establishing a "'direct causal link' between the municipal policy and constitutional injury." (doc. 101 at 13.) Accepting as true for purposes of Rule 12(b)(6) Plaintiff's allegations that Officers acted as they did because the City looked the other way, failed to investigate allegations of excessive force, and created an environment where Officers feared no consequences for violations of constitutional rights, he has sufficiently alleged that a municipal policy or custom was the moving force of the constitutional deprivation.

Because Plaintiff has sufficiently pleaded a claim for municipal liability, the City's motion to dismiss should be denied.

## IV. OFFICERS' MOTION TO DISMISS

Officers raise four grounds in their motion to dismiss: (1) Plaintiff's excessive force claim lacks sufficient detail; (2) Plaintiff does not adequately plead a failure to intervene or bystander liability claim; (3) Plaintiff fails to articulate a valid federal claim for malicious prosecution, and the claim is time-barred; (4) Plaintiff's conspiracy claim does not allege either an agreement between Officers or a constitutional deprivation, and the claim is time-barred. (doc. 99.)

### A. <u>Excessive Force</u>

Officers move to dismiss on grounds that Plaintiff's complaint "lacks sufficient detail" in that it "fails to allege the conduct that each officer engaged in which would constitute excessive force." (doc. 99 at 6.) Plaintiff alleges that Ivy, Ross, Clement, and Guthrie used excessive force—in violation of the Fourth Amendment—when they repeatedly hit, kicked, and beat him when he was

handcuffed and complying with the officers' directions. (doc. 96 at 4-9.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Goodman v. Harris County*, 571 F.3d 388, 397 (5th Cir. 2009); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

A violation under the Fourth Amendment is dependant on whether the alleged use of force was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the

fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

Here, Plaintiff alleges that Ivy, Ross, Clement, and Guthrie hit, kicked, and beat him while he was lying on the ground, handcuffed, and not resisting or struggling. (doc. 96 at 5-6.) Accepting his facts as true, no use of force was reasonable because Plaintiff was compliant with Officers' instructions. Plaintiff's complaint therefore states a claim for excessive force under the Fourth Amendment against Ivy, Ross, Clement, and Guthrie.

**B. <u>Failure to Intervene/Bystander Liability</u>**

Officers move to dismiss Plaintiff's failure to intervene, or bystander liability, claim because he does not adequately plead the claim against any of the defendants. (doc. 99 at 2-3.) Plaintiff alleges that Officers violated his "right to be free from unreasonable physical seizures under the Fourth Amendment . . . when they failed to intervene and stop the use of excessive force against him." (doc. 96 at 10.) Officers contend that Plaintiff's allegations against Kirby and Godwin fail to state claim because Godwin was elsewhere when excessive force was allegedly used, and Kirby "never entered the home and was merely present to secure the perimeter with a K-9 in the event that Plaintiff attempted to flee." (doc. 99 at 3.) Officers also contend that "[w]ith respect to the other individual officers, Plaintiff makes no attempt to allege facts which demonstrate that the other officers observed the alleged use of excessive force or that they were in a position to prevent such force and would have had time to prevent it." (*Id.* at 2.)

An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. *Hale v.*

*Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Mere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability. *Vasquez v. Chacon*, No. 3:08–CV–2046–M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citation omitted). An officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene arise. *See Hale*, 45 F.3d at 919; *Nowell*, 147 F. Supp. 2d at 507. In evaluating whether an officer took reasonable measures to protect a suspect, courts have considered both the duration of the alleged use of excessive force by other officers and the location of the suspect relative to the officer against which a claimant seeks bystander liability. *Vasquez*, 2009 WL 2169017, at *6; *see, e.g.*, *Morris v. Pierce*, No. 07-cv-0080, 2008 WL 4287967, at *7 (W.D. La. Sep. 17, 2008) (no bystander liability because no evidence to suggest that officer had a reasonable opportunity to intervene in a struggle that lasted 10-15 seconds); *Gilbert v. French*, No. H-06-3986, 2008 WL 394222, at *27 (S.D. Tex. Feb. 12, 2008) (no indication that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Haggerty v. Texas Southern Univ*., No. Civ.A. H-01-2990, 2005 WL 2030866, at *4 (S.D. Tex. Aug. 22, 2005) (no bystander liability because officer was several yards away and did not use any force on suspect); *Paternostro v. Crescent City Connection Police Dept.*, No. 00–2740, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (no bystander liability because evidence did not show that officer was in a location from which he could have had a realistic opportunity to prevent the violations of another officer).

Here, Plaintiff alleges that Officers arrived at his home at approximately 10:30 p.m. on July 24, 2010, to execute a valid arrest warrant. (doc. 96 at 4.) He alleges that Ivy, Ross, Clement, and Guthrie used force against him—including repeatedly kicking, punching, and beating him while he was handcuffed and compliant—both in the bedroom and on the front lawn. (*Id*. at 4-7.) According

to Plaintiff, the beating inside the house lasted "[s]everal minutes," and he was beaten for approximately four to five minutes on the front lawn as well. (*Id.* at 5-6.) During both beatings, he allegedly screamed for help and pleaded with the Officers to stop. (*Id.*) Ivy, Ross, Clement, and Guthrie were allegedly present at both incidents but ignored his cries for help. (*Id.*) Additionally, Godwin was allegedly outside of the bedroom with Plaintiff's fiancée during the beating and while Plaintiff was brought through the hallway and living room. (*Id*. at 6.) Godwin allegedly did nothing to help Plaintiff. (*Id*.) Finally, Plaintiff alleges that Kirby was outside of the house and in close proximity to beating that occurred on the front lawn, but that he did not intervene. (*Id*. at 10.)

Accepting these facts as true and viewing them in the light most favorable to the plaintiff, as the Court must at this stage of the proceedings, they suffice to give rise to a reasonable inference that Officers were present at the house, either saw or heard at least part of the beating, and had an opportunity to realize the excessive nature of the force and to stop it. The complaint therefore sufficiently states a constitutional violation by Officers.

**C. <u>Unreasonable Seizure and Continued Prosecution/Malicious Prosecution</u>**

Officers move to dismiss Plaintiff's unreasonable seizure and continued prosecution claim because it fails to state a federal claim. (doc. 99 at 3.) Plaintiff alleges that Ivy, Ross, Clement, Guthrie, and Godwin "caused the filing of a misdemeanor criminal charge against [him], despite the lack of probable cause to establish the existence of the crime for which Plaintiff was charged," in violation of the Fourth Amendment, or in the alternative Fourteenth Amendment. (doc. 96 at 12-13.) Officers also contend that even if there is a federal claim, Plaintiff was seized pursuant to a lawful felony warrant, and this claim is barred by the statute of limitations for Fourth Amendment violations. (doc. 99 at 4-5.)

There is no "freestanding constitutional right to be free from malicious prosecution[.]" *Castellano v. Fragozo*, 352 F.3d 939, 941 (5th Cir. 2003) (en banc ), *cert denied*, 543 U.S. 808 (2003); *accord Hamilton v. Collett*, 83 F. App'x 634, 636 (5th Cir. 2003) (explaining that "this court has recently held that a claim of malicious prosecution standing alone does not violate the United States Constitution."). Rather, a malicious prosecution claim must specify the particular constitutional right allegedly violated: "This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted." *Castellano*, 352 F.3d at 945.

***1. Fourth Amendment***

Plaintiff first relies on the Fourth Amendment. (doc. 96 at 12-13.) As recently reaffirmed by the Fifth Circuit, "Pretrial use of fabricated evidence to secure a person's arrest can violate the Fourth Amendment." *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015) (citing *Castellano*, 352 F.3d at 959). However, "in order to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime." *Id.* (emphasis in original) (citing *Whittington v. Maxwell*, 455 F. App'x 450, 458–59 (5th Cir. 2011) (stating that "[w]ith regard to pretrial confinement, '[t]he sole issue [under the Fourth Amendment] is whether there is probable cause for detaining the arrested person pending further proceedings,' " and finding illegal detention claim could stand where there was a factual dispute over the existence of probable cause); *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (" '[T]o prevail in a § 1983 claim for false arrest,' . . . . [a]s applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime.")).

Here, Plaintiff concedes that Officers had a "facially valid warrant," and he "does not contest

their right to execute that warrant." (doc. 96 at 13 n.1.) Moreover, he has not alleged that he was confined or detained at any time solely for the resisting arrest charge. (*See id*. at 4-9, 12-14.) Accordingly, his arrest and any related confinement were the result of probable cause. Because Officers had probable cause, Plaintiff fails to state a claim for unreasonable seizure and continued prosecution in violation of the Fourth Amendment upon which relief may be granted.[4]

***2. Fourteenth Amendment***

In the alternative, Plaintiff alleges that "the continued charge against [him] without probable cause was a violation of his due process rights guaranteed under the Fourteenth Amendment." (doc. 96 at 14.)

It is well settled that "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.'" *Cole*, 802 F.3d at 765 (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994)). There may be a due process violation, however, where police intentionally fabricate evidence and successfully get someone falsely charged, and the Fourth Amendment is unavailing. *Id.* at 773. Unlike his Fourth Amendment claim, the presence of probable cause does not forestall Plaintiff's options under the Fourteenth Amendment. *See id.* at 772-73. In *Cole,* the Fifth Circuit "agree[d] with those [circuit courts] that have found a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Id*. at 771.

Here, Plaintiff has alleged that Ivy, Ross, Clement, Guthrie, and Godwin "caused the filing of a misdemeanor criminal charge against Plaintiff;" that Ivy spread false facts about Plaintiff's conduct

[4]Officers' statute of limitations argument is solely directed at the Fourth Amendment claim. (*See* doc. 99 at 4-5.) Because Plaintiff failed to state a Fourth Amendment claim, it is unnecessary to reach the limitations argument.

to have him charged with Resisting Arrest; and that "Ross, Clement, Guthrie, Kirby, or Godwin did nothing to correct the inaccurate and untruthful statements provided to the magistrate that resulted in [his] false charge." (doc. 96 at 12-14.) The complaint therefore does sufficiently state a constitutional violation under the Fourteenth Amendment against Officers.

**D. <u>Conspiracy</u>**

Officers move to dismiss Plaintiff's claim that they "entered into a conspiracy to deprive [him] of his right to be free from excessive force and illegal seizure and detention by acting in concert either to orchestrate or to carry out the illegal seizure and cause the illegal prosecution . . . when they knew there was no probable cause to arrest him or to charge him with . . . Resisting Arrest" because (1) Plaintiff failed to demonstrate there was an agreement among individuals to commit a constitutional deprivation or that a deprivation occurred, (2) he does not allege a constitutional deprivation, and (3) he brought this cause of action after the statute of limitations elapsed. (doc. 99 at 5-6.)

To prove a conspiracy under § 1983, a plaintiff must allege facts that demonstrate there was an agreement among individuals to commit a constitutional deprivation and an actual deprivation occurred. *See Jabary v. City of Allen*, 547 F. App'x 600, 609 (5th Cir. 2013); *Cinel*, 15 F.3d at 1343. A conspiracy allegation under § 1983 allows a plaintiff to "impose liability on all of the defendants without regard to who committed the particular act." *Hale*, 45 F.3d at 920. To meet his pleading requirement, Plaintiff must set forth facts that support that an agreement took place. *See, e.g., Jabary*, 547 F. App'x at 610-11 ("The times, places, and other circumstances of the 'private meetings' and secret conversations are notably absent. [Plaintiff] simply fails to create a reasonable inference that such an agreement existed."). Although Plaintiff contends that "specific details or semantics are not required" or that "[t]o hold [him] to a standard requiring the time, place, and 'other circumstances'

would be nearly impossible" (doc. 104 at 13), mere allegations of similar conduct that could have occurred independently without an agreement, also known as parallel conduct, is insufficient. *See Jabary*, 547 F. App'x at 610; *see also Twombly*, 550 U.S. at 556-57.

Here, Plaintiff alleges:

> [Officers] entered into a conspiracy to deprive Plaintiff of his right to be free from excessive force and illegal seizure and detention by acting in concert either to orchestrate or to carry out the illegal seizure and cause the illegal prosecution described in this Amended Complaint when they knew there was no probable cause to arrest him or to charge him with the offense of Resisting Arrest.

(doc. 96 at 11.) Plaintiff provides no details about where or when an agreement took place, the content of the agreement, or even who was present. (*See* docs. 96 at 11-12;n 104 at 13.) Accordingly, Plaintiff's second amended complaint only alleges parallel conduct. *See, e.g., Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (noting that civil conspiracy claims must be pleaded with a degree of specificity because the "pleading requirements governing civil conspiracies are relatively strict.") (citations omitted). Therefore, he has failed to sufficiently allege that a conspiracy occurred.[5]

## V. RECOMMENDATION

The City's motion to dismiss, filed March 25, 2015 (doc. 101), should be **DENIED**, and Officer's motion to dismiss, filed March 19, 2015 (doc. 99), should be **GRANTED in part** and **DENIED in part**.[6] Plaintiff's conspiracy claim against Officers should be **DISMISSED with**

---

[5] Because Plaintiff has not alleged facts to support an agreement, Officers' other arguments need not be considered.

[6] In his responses to both motions, Plaintiff requests an opportunity to replead as an alternative to dismissal. (docs. 103 at 14; 105 at 16.) His requests do not comply with Local Rule 15.1 of the Local Civil Rules for the Northern District of Texas, which provides that when a party files a motion for leave to file an amended pleading, the party must attach the proposed amended pleading as an exhibit. Compliance with the rules of procedure is required of all parties, whether or not they are represented by counsel, and leave to amend may be denied for non-compliance. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation). Plaintiff's requests are **DENIED** without prejudice to filing a motion that complies with the applicable rules of civil procedure, the local rules, and the scheduling order.

**prejudice** for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**SIGNED this 23rd day of November, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE