IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW B. ROBINSON, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:10-CV-2496-M |
| | § | |
| CITY OF GARLAND, TEXAS, et. al, | § | |
| Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated July 21, 2013 (doc. 56), this case has been referred for pretrial

management, including the determination of non-dispositive motions and issuance of findings of fact

and recommendations on dispositive motions.  Before the Court is *Officers Ivy, Ross, Clement,*

*Guthrie, Kirby, and Detective Godwin's Motion for Summary Judgment*, filed May 29, 2015 (doc.

112); *Plaintiff's Objections to, and Motion to Strike, Defendants' Summary Judgment Evidence*,

filed July 3, 2015 (doc. 127); and *Defendants' Motion to Strike Plaintiff's Summary Judgment*

*Evidence*, filed July 24, 2015 (doc. 132).  Based on the relevant filings and applicable law, the

plaintiff's motion to strike is **GRANTED in part** and **DENIED in part**, the defendants' motion to

strike is **GRANTED**, and their motion for summary judgment should be **GRANTED in part** and

**DENIED in part**.

## I. BACKGROUND

On December 8, 2010, Matthew B. Robinson (Plaintiff) filed suit against Officers Billy J.

Ivy, Kevin Ross, Bryan Clement, John Guthrie, and Joshua Kirby and Detective Craig Godwin

(Defendants) under 42 U.S.C. § 1983. (doc. 1 at 1.)[1]  He alleges use of excessive force and failure

to intervene in violation of the Fourth Amendment, and unreasonable seizure and continued

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page
rather than the page numbers at the bottom of each filing.

prosecution in violation of the Fourteenth Amendment. (doc. 96.)[2]

Plaintiff alleges that at approximately 10:30 p.m. on July 24, 2010, Defendants arrived at his home to execute a valid arrest warrant. (*Id.* at 4.)  They surrounded the house, disabled the front porch light, banged on the front door, and identified themselves. (*Id.* at 4-5.)  Plaintiff's fiancée opened the front door for Defendants, who had their weapons drawn. (*Id.* at 5.)  Godwin and another detective stayed with her in the living room, while Ivy, Ross, Clement, and Guthrie entered Plaintiff's bedroom and arrested him. (docs. 96 at 5; 124 at 8.)  Plaintiff contends that "[a]s soon as [he] was handcuffed, the officers began taking turns kicking and punching him across his entire body, while one officer trained a rifle at his head." (doc. 96 at 5.)  After several minutes of such conduct, he was taken outside of the house, where "approximately 4-5 officers . . . . alternated between kicking, punching, and beating him." (*Id.* at 5-6.)  "Officers even straddled his back while [he] remained down in the grass, covered in blood and sweat." (*Id.* at 6.)  He alleges that he repeatedly cried out that Defendants were hurting him and pleaded with them to stop. (*Id.*)

He contends that after approximately ten minutes, one of the officers noticed Plaintiff's neighbor watching the incident and asked the observer, "Did you see him try to get away?" (*Id.* at 7.)  Paramedics were called to the scene, and they treated him before he was taken to Garland Jail. (docs. 114-18 at 1-6; 125-8 at 31-32.)  After complaining of loss of consciousness, Plaintiff was taken to the emergency room at Baylor Medical Center – Garland (Baylor), where he was prescribed pain medication for his head injuries and hand contusion, and then he was returned to Garland Jail. (docs. 96 at 7; 114-22 at 1-20; 126-8 at 1.)

---

[2] Plaintiff's conspiracy and Fourteenth Amendment unreasonable seizure and continued prosecution claims were previously dismissed under Rule 12(b)(6). (docs. 147 at 14-17; 152 at 1.)

Plaintiff alleges that "in an effort to justify their actions and to cover up their violations of [his] constitutional rights, Defendants caused [him] to be charged with [the additional charge of] Resisting Arrest, a misdemeanor offense, by alleging that [he] continually thrashed about, and that he resisted their attempts to handcuff him." (doc. 96 at 8.)  This charge was based on the allegedly false report completed by Ivy. (docs. 125-8 at 1-32; 126-1 at 1-7.)  Even after the underlying criminal charges that prompted his arrest were resolved, Plaintiff claims he had to deal with the pending resisting arrest charge. (doc. 96 at 13.)  It was ultimately dropped by the Dallas County District Attorney's Office three and one half years after his arrest. (doc. 126-5 at 1.)

Following his arrest, Plaintiff contacted the Federal Bureau of Investigation (FBI) to report Defendants' excessive force. (doc. 125-8 at 22.)  The FBI investigated but closed the case on May 30, 2012, after both the U.S. Department of Justice – Civil Rights Division and the U.S. Attorney's Office for the Northern District of Texas declined to prosecute the case. (doc. 114-20 at 1-2.)

Defendants contend that Plaintiff refused to comply with instructions from Clement, Ross, Guthrie, and Ivy, who "repeatedly ordered [him] to get on the ground and put his hands out to the side" so they could place him under arrest. (doc. 113 at 10.)  They allege that "[b]ecause the area [in the bedroom] was so congested with furniture and [Plaintiff] was so large, he struck the dresser drawer on the way to the ground." (*Id*. at 11.)  They also contend that they used proper muscling techniques and distractionary strikes to Plaintiff's suprascapular nerve point when he fought back and resisted inside the house and on the front lawn when they were taking him to the police car. (*Id*.)

On May 29, 2015, Defendants moved for summary judgment. (docs. 112, 113.)  Plaintiff responded on July 3, 2015 (docs. 123, 124), and Defendants replied on July 24, 2015. (doc. 130.)

## II. EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

Both sides have objected and moved to strike the other side's evidence. (*See* docs. 127, 132.)

A.       **Plaintiff's Objections**

Plaintiff moves to strike Exhibits S and X in Defendants' appendix on the grounds that the evidence "pertains entirely to the underlying criminal offense which was the basis of the felony warrant for which [he] was being arrested on the night of July 24, 2010. . . .[and that] [t]he specific facts of the underlying criminal charge, as well as the disposition of that case, have no bearing on the issues in this litigation." (doc. 127 at 1.)

The Federal Rules of Evidence provide that only relevant evidence is admissible.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 & 402. "Relevance under Rule 401, however, is a low threshold." *Galderma Laboratories, LP v. Paddock Laboratories, Inc.*, No. 4:09-CV-002-Y, 2011 WL 1119700, at *3 (N.D. Tex. Mar. 28, 2011).

Defendants respond that Exhibit S is relevant because it shows that "[Plaintiff] was arrested pursuant to a valid arrest warrant, on a charge [of felony injury to a child] to which he [pleaded] guilty, and was consequently sentenced." (doc. 131 at 3.)  Exhibit S contains certified copies of an *Affidavit for Arrest Warrant or Capias* for Plaintiff, an *Order of Deferred Adjudication* in *Texas v. Matthew Brian Robinson*, and *Conditions of Community Supervision* for Plaintiff. (*See* doc. 114-19 at 1-16.)  The affidavit relates to the objective reasonableness of Defendants' actions, which is part of Plaintiff's claims, because it addresses what Defendants knew when they went to arrest him. Accordingly, the affidavit tends to make the reasonableness of Defendants' actions more or less

probable and is therefore relevant.  The remaining documents in Exhibit S, however, relate solely to matters that occurred after Plaintiff's arrest and address his ultimate guilt on those charges, not the events of his arrest or charges derived from the arrest.  The order and conditions do not make the existence of a consequential fact more or less probable.  Accordingly, the order and conditions are not relevant.  Plaintiff's objection is therefore overruled regarding the affidavit and sustained regarding the order and conditions, and the motion to strike this exhibit is granted in part and denied in part.[3]

Defendants next argue that Exhibit X, which includes a declaration of Godwin and attached exhibits, is relevant because "Detective Godwin discusses the information that was known to him about the Plaintiff prior to the arrest." (doc. 131 at 4-5.) According to Defendants, that information explains the reasons they approached the arrest in the manner that they did. Because objective reasonableness is part of Plaintiff's claims, and Exhibit X tends to make the reasonableness of Defendants' actions more or less probable, the document is relevant.  This objection is overruled and the motion to strike this exhibit is denied.

## B.   **Defendants' Objections**

Defendants object that "the declaration [of Plaintiff's attorney] is clearly insufficient to authenticate certain of the documents attached" (doc. 132 at 1-2) and therefore move to strike Exhibits 22, 23, 25, 26, and 28. (doc. 132.)

Under Fed. R. Evid. 901(a), authentication or identification is a condition precedent to admissibility. Rule 901 does not require conclusive proof of authenticity; it merely requires some

---

[3] Because the conspiracy claim has previously been dismissed, Defendants' arguments related to that claim are not considered.

evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir.1993). Some types of evidence are self-authenticating and require no extrinsic foundation for admission. *McIntosh v. Partridge*, 540 F.3d 315, 322 n.6 (5th Cir. 2008). Rule 902 sets out the requirements for such self-authenticating documents. *See* Fed. R. Evid. 902. When a document is not self-authenticating, however, "[a] document can be authenticated under Rule 901(b) by a witness who wrote it, signed it, used it, or saw others do so." *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, No. MDL 1446, Civ.A. H–01–3624, 2003 WL 23316646, at *2 (S.D. Tex. Mar. 27, 2003) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir. 2002) (citations omitted)).

> When authenticity is challenged, the judge then makes a preliminary determination whether the evidence is sufficient "to allow a reasonable person to believe the evidence is what it purports to be," but the final determination as to what weight it will be given or whether it is disregarded is within the province of the jury or fact finder. *Alicea–Cardoza*, 132 F.3d at 4; 5 J.B. Weinstein's *Federal Practice Evidence* § 901.02 [4] (1999). In determining admissibility, the judge may consider circumstantial evidence, such as where the document is located, or indicia on the document providing evidence of authenticity. *See generally John Beaudette, Inc. v. Sentry Ins. A Mut. Co*. 94 F.Supp.2d 77, 89 (D.Mass.1999) (and citations therein).

*Id.*

Here, the challenged exhibits consist of an event chronology produced by the City of Garland, surveillance stills allegedly extracted from surveillance video by the FBI, Plaintiff's handwritten statement that purports to have been submitted to the FBI, Lake Point Medical Records, and photos of Plaintiff's dresser. (*See* docs. 132 at 2-6; 124.) These documents are not self-authenticating under Rule 902, and Plaintiff does not allege that Defendants produced the documents to him in discovery. In support of the exhibits, Plaintiff submits a declaration by his attorney. (doc. 125-1 at 1-3.) He does not purport to have personal knowledge of the evidence he seeks to

authenticate, however.  He merely states that "I am personally familiar with the documents produced in discovery in this lawsuit, the transcripts of depositions taken in this case, and documents obtained from the FBI. True and correct copies of those documents are submitted to this Court . . . as Exhibits to [Plaintiff's] Response." (doc. 125-1 at 1.)  He provides no other information regarding the production of the documents, and he does not specify what, if any, documents were obtained from Defendants. (*See id.* at 1-2.)

"An attorney's affidavit must meet the same standards as any other person's affidavit." *In re Enron Corp.*, 2003 WL 23316646, at *2.  Courts "have repeatedly held that an affidavit does not meet this requirement simply because the affiant states that [his] conclusions are based on personal knowledge. Rather, the affiant must provide the district court with sufficient information to allow the latter to conclude that the affiant's assertions are indeed based on such knowledge." *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014); *see, e.g. Cramer v. NEC Corp. of America*, 496 F. App'x 461, 463-64 (5th Cir. 2012) (per curiam) (affirming the exclusion of summary judgment evidence because "[t]he discovery request was too broad to provide evidence of authenticity, the document itself bears no indication of authenticity, and [the] deposition testimony was noncommittal."); *see also R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 220 (5th Cir. 2005) (holding that exclusion of an exhibit was not an abuse of discretion absent indicia of authenticity within the exhibit itself or other evidence on the record tending to authenticate the exhibit.).  Because the exhibits at issue are not self-authenticating documents and Plaintiff has not provided sufficient evidence of authenticity to establish that the submitted exhibits are true copies of what they purport to be, Defendants' objection to these exhibits is sustained, and

the motion to strike these exhibits is granted.[4]

### III. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).  The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S.

---

[4] Even if the exhibits were considered, they would not affect the recommendation for disposition of the summary judgment motion.

at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).  Although courts view

the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot

defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla

of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).   The

non-movant must show that the evidence is sufficient to support a resolution of the factual issue in

his favor. *Anderson*, 477 U.S. at 249.

Here, Defendants have carried their summary judgment burden by asserting the qualified

immunity defense. *See Gates*, 537 F.3d at 419.

## IV. QUALIFIED IMMUNITY

Defendants move for summary judgment on grounds that they are protected from suit by

qualified immunity. (doc. 112 at 17.)

A governmental employee who is sued under § 1983 may assert the affirmative defense of

qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects

government officials performing discretionary functions from suit and liability for civil damages to

the extent their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*

*v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not

merely from liability, immunity questions should be resolved as early as possible in the litigation.

*See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a

two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).  Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009).  If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that Defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407–08 (5th Cir. 2007).

## V. CONSTITUTIONAL VIOLATION

Defendants contend that there is no credible evidence of a constitutional violation with respect to each of Plaintiff's claims and that he cannot overcome their entitlement to qualified immunity.  (doc. 112 at 4, 17-23.)

### A.   Excessive Force

The Supreme Court has held that "all claims that law enforcement officers have used

excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of

a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

*Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Fourth Amendment protects "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. CONST. amend. IV.  A seizure occurs when an officer "by means of physical force

or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S.

1, 20 n.16 (1968).  To succeed on a Fourth Amendment excessive force claim under § 1983, a

plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was

excessive to the need and that (3) the force used was objectively unreasonable." *Goodman v. Harris*

*County*, 571 F.3d 388, 397 (5th Cir. 2009); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379,

382 (5th Cir. 2009).

A violation under the Fourth Amendment is dependant on whether the alleged use of force

was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective

reasonableness is "a pure question of law" that is considered after determining the relevant facts.

*Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).  To gauge the objective reasonableness of the force

used, the courts "must balance the amount of force used against the need for force." *Ramirez v.*

*Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399

(5th Cir. 2004)).  Proper application of this balancing test "requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The

reasonableness inquiry must consider "the fact that police officers are often forced to make

11

split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

### 1.   *Godwin and Kirby*

Plaintiff alleged "that Detective Godwin orchestrated the excessive use of force because he was the detective assigned to the underlying felony case, and convened this specific group of officer to execute the arrest warrant." (doc. 114-21 at 3-4.)  "Plaintiff admit[ted] [in his response to a request for admission] that Detective Godwin never made physical contact with him," however. (doc. 114-23 at 3.)  Likewise, Plaintiff's own summary judgment evidence reflects that Kirby was present at the scene with a police dog, Boomer (doc. 125-6 at 2), but that he did not make physical contact with Plaintiff during the arrest. (*See* docs 125,126.)  Accordingly, Plaintiff has not brought forward sufficient evidence to support a resolution in his favor on whether Godwin or Kirby violated his constitutional rights by using excessive force during the arrest.  Both are therefore entitled to qualified immunity on the excessive force claim against them.

### 2.   *Ivy, Ross, Guthrie, and Clement*

Plaintiff has presented evidence that Ivy, Ross, Guthrie, and Clement went into his bedroom to place him under arrest. (*See* docs. 125-8 at 3; 126-1 at 3.)  He has also presented evidence that he immediately complied with their commands to get down to the ground and put his hands behind his back to be cuffed, and that once handcuffed, the four officers collectively kicked and punched him on the ground, which caused him to go in and out of consciousness.  (doc. 125-8 at 5-6, 8-11.) One of the officers allegedly butted his mouth with an "assault rifle" while he was still handcuffed and compliant. (*Id*. at 27-28.)  Plaintiff's fiancée, who was in the living room speaking to Godwin and Golladay, stated in her deposition that she could hear scuffling, muffled sounds, and

"bloodcurdling screams" from the bedroom, including Plaintiff stating "stop," "don't," and "you're hurting me." (doc. 125-9 at 9-11.)  In his deposition, Plaintiff stated that he was compliant and non-aggressive during the arrest, both inside the house and on the lawn. (doc. 125-8 at 23-25.)

Plaintiff's and his fiancée's deposition testimony is sufficient to create a genuine issue of material fact regarding what happened during the arrest.  Where the evidence raises a genuine issue of material fact, courts "assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under [the] circumstances." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).  Under his verison of facts, a reasonable jury could find that Plaintiff was compliant and nonresistant when he was being arrested, so no force was needed, and that Ivy, Ross, Guthrie, and Clement violated his Fourth Amendment right by using excessive force against him. *See Graham*, 490 U.S. at 396.  Accordingly, Plaintiff has sufficiently demonstrated a constitutional violation by Ivy, Ross, Guthrie, and Clement, and the motion for summary judgment should be denied on this ground.

**B.**     **Failure to Intervene/Bystander Liability**

An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Mere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability. *Vasquez v. Chacon*, No. 3:08–CV–2046–M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citation omitted). An officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene to arise. *See Hale*, 45 F.3d at 919; *Nowell*, 147 F.Supp.2d at 507.

In evaluating whether an officer took reasonable measures to protect a suspect, courts have

considered both the duration of the alleged use of excessive force by other officers and the location

of the suspect relative to the officer against which a claimant seeks bystander liability. *Vasquez*,

2009 WL 2169017, at *6; *see, e.g., Morris v. Pierce*, No. 07–cv–0080, 2008 WL 4287967, at *7

(W.D. La. Sep. 17, 2008) (no bystander liability because no evidence to suggest that officer had a

reasonable opportunity to intervene in a struggle that lasted 10-15 seconds); *Gilbert v. French*, No.

H–06–3986, 2008 WL 394222, at *27 (S.D. Tex. Feb. 12, 2008) (no indication that officers had time

to prevent use of excessive force that occurred over the span of a few seconds); *Haggerty v. Texas*

*Southern Univ.*, No. Civ.A. H–01–2990, 2005 WL 2030866, at *4 (S.D. Tex. Aug. 22, 2005) (no

bystander liability because officer was several yards away and did not use any force on suspect);

*Paternostro v. Crescent City Connection Police Dept.*, No. 00–2740, 2002 WL 34476319, at *11

(E.D. La. Apr. 2, 2002) (no bystander liability because evidence did not show that officer was in a

location from which he could have had a realistic opportunity to prevent the violations of another

officer).

     Assuming without deciding for purposes of this motion only that Ivy, Ross, Guthrie, and

Clement used excessive force when they arrested Plaintiff,[5] the dispositive issue for determining

Defendants' liability under § 1983 is whether each defendant took reasonable measures to protect

Plaintiff from the use of excessive force. *See Hale*, 45 F.3d at 919.  To meet his burden to defeat

Defendants' assertion of qualified immunity, Plaintiff must identify evidence in the record to show

that each defendant had a reasonable opportunity to realize the excessive nature of the force used

and had a realistic opportunity to stop it. *See id.*; *Zarnow*, 500 F.3d at 407.  In his response, Plaintiff

---

[5] Because it has been recommended that the summary judgment be granted on the excessive force claims against Godwin and Kirby, they are not included in this assumption.

presents evidence that Ivy, Ross, Guthrie, and Clement were involved in the arrest in the bedroom and used excessive force in the bedroom (docs. 125-8 at 8-12; 126-1 at 3); Godwin was in the living room speaking to Plaintiff's fiancée, and that Plaintiff's screams were clearly audible at that location (doc. 125-9 at 9-11); and that Kirby was within twenty feet of the altercation outside and observed Plaintiff being secured by Ivy and Guthrie. (doc. 125-6 at 6-8.)

Under his version of facts, a reasonable jury could find that Ivy, Ross, Guthrie, and Clement used excessive force in the presence of each other and that they did not intervene to stop the use of excessive force used in their presence. Additionally, a reasonable jury could find that Godwin heard Plaintiff's screams for help but failed to intervene. Finally, a reasonable jury could find that Kirby watched the use of excessive force outside the house, but that he failed to intervene. Accordingly, the summary judgment evidence submitted by Plaintiff is sufficient to create a genuine issue of material fact regarding bystander liability against all defendants throughout the arrest, and the motion should be denied on this ground.

**C.      Unreasonable Seizure and Continued Prosecution/Malicious Prosecution**

Plaintiff's claim for unreasonable seizure and continued prosecution, also known as malicious prosecution, arises under the Fourteenth Amendment. (doc. 96 at 9-12.)

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. It is the constitutional provision that guarantees due process rights against state actors. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). "Prohibition against improper use of the 'formal [constraints] imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment

15

due process clause." *Jones*, 203 F.3d at 880-81 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 575 (1972)).

It is well settled that "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.' " *Cole*, 802 F.3d at 765 (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994)). There may be a due process violation, however, when police intentionally fabricate evidence, successfully get someone falsely charged, and relief under the Fourth Amendment is unavailable. *Id.* at 773. The presence of probable cause does not forestall Plaintiff's options under the Fourteenth Amendment. *See id.* at 772–73. In *Cole*, the Fifth Circuit "agree[d] with those [circuit courts] that have found a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Id.* at 771.

To carry his summary judgment burden on his malicious prosecution claim, Plaintiff presents evidence that he was compliant and nonresistant during the arrest (doc. 125-8 at 5-6, 8-9), and that "Ivy intentionally provided false testimony and authored the arrest report, which was *the sole basis* for Plaintiff's Resisting Arrest charge, in order to cover his and his fellow officers' excessive use of force." (doc. 124 at 29) (emphasis added) (citing docs. 125-2 at 2-3; 126-1 at 1-7.) Under his version of facts, a reasonable jury could find that excessive force was used against Plaintiff and that Ivy then fabricated evidence to cover-up their use of excessive force. This is sufficient to create a genuine issue of material fact regarding the malicious prosecution claim against Ivy. However, Plaintiff has not brought forward sufficient evidence to support a resolution in his favor on whether the remaining defendants violated his constitutional rights by fabricating evidence as well; in fact, Plaintiff's response alleges the actions of Ivy were "the sole basis" for the malicious prosecution

claim. (doc. 124 at 29.)  Ross, Guthrie, Clement, Godwin, and Kirby are therefore entitled to qualified immunity on this claim.

## VI. OBJECTIVE REASONABLENESS

To show the inapplicability of the asserted qualified immunity defense, Plaintiff must also present evidence to show that the violation of his constitutional rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Zarnow*, 500 F.3d at 407–08.

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Being clearly established in an abstract sense generally gives insufficient notice; in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting.  *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (per curiam); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established).  Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

## A.      Excessive Force

At the time of Plaintiff's arrest in July 2010, it was clearly established that the permissible amount of force necessary to arrest a suspect depends, in part, on whether the suspect was resisting

arrest or attempting to flee. *Graham*, 490 U.S. at 396.  Under Plaintiff's version of events—which

Defendants dispute—he was compliant, following the officers' directions, and did not resist before

they began to beat him both inside the house and on the front lawn. (doc. 125-8 at 8-21.)  Ivy, Ross,

Guthrie, and Clement should have known that under the circumstances the level of force alleged by

Plaintiff was not permissible because he was compliant and restrained. *See Bush v. Strain*, 513 F.3d

492, 502 (5th Cir. 2008) (holding that the defendant should have known that he could not forcefully

slam [the plaintiff's] face into a vehicle while she was restrained, subdued, and not attempting to

flee).

In summary, Plaintiff has provided competent summary judgment evidence sufficient to

create a genuine issue of material fact regarding the events of his arrest.  His version of the facts,

which must be take as true for purposes of this motion, suffices to support a finding that Ivy, Ross,

Guthrie, and Clement  violated his constitutional rights by using excessive force against him and that

the violation was objectively unreasonable under clearly established law at the time of the violation.

The disputed material facts regarding the use of force preclude "the Court from granting summary

judgment on the ground of qualified immunity" on this claim.  *Malone v. City of Fort Worth*, No.

4:09–CV–634–Y, 2014 WL 5781001, at *15 (N.D. Tex. Nov. 6, 2014) (quoting *Estate of Henson*

*v. Wichita Cnty.*, 652 F.Supp.2d 730, 748 (N.D. Tex. 2009)).

**B.**     **Bystander Liability**

The clearly established law at the time of Plaintiff's arrest was that an officer who is present

at the scene and does not take reasonable measures to protect a suspect from another officer's use

of excessive force may be liable under § 1983. *See Hale*, 45 F.3d at 919.  It was also established that

mere presence is not enough, and that an officer must have a reasonable opportunity to realize the

excessive nature of the force and a realistic opportunity to stop it for the duty to intervene to arise. *See id.* Defendants were on notice that courts consider both the duration of the alleged use of excessive force by other officers and the location of the suspect relative to the bystander officers. *See Vasquez*, 2009 WL 2169017, at *6 (citations omitted).

Under Plaintiff's version of events, Ivy, Ross, Guthrie, and Clement were present in the bedroom during the arrest (docs. 125-8 at 8-12; 126-1 at 3); Godwin was in the living room speaking to Patterson and Plaintiff's screams were clearly audible at that location (doc. 125-9 at 9-11); and Kirby was within twenty feet of the altercation outside and observed Plaintiff being secured by Ivy and Guthrie. (doc. 125-6 at 6-8.) Plaintiff has provided evidence that the events on the front lawn lasted for approximately seven to ten minutes and involved forcefully being thrown to the ground and bending both his wrists and arms while restrained. (doc. 125-8 at 16, 19-20.) Therefore, the defendants were either present or in close proximity to the use of excessive force. The defendants also had a reasonable opportunity to realize the excessive nature of the force and an opportunity to intervene. Accordingly, Plaintiff has provided competent summary judgment evidence sufficient to create a genuine issue of material fact regarding the objective reasonableness of Defendants' actions.

## C.   <u>Malicious Prosecution</u>

As recently reaffirmed by the Fifth Circuit, "[b]y 2010, no 'reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit.'" *Cole*, 802 F.3d at 773 (*Limone v. Condon*, 372 F.3d 39, 50 (1st Cir. 2004)).

> To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. [T]he wrongfulness of charging someone on the basis of deliberately fabricated

> evidence is sufficiently obvious, . . . a reasonable officer in [the defendant's] shoes would have known his conduct violated the Constitution. [N]o reasonably competent police officer could believe otherwise.

*Id.* at 773-74 (internal citations and quotation marks omitted).  Under Plaintiff's version of events, following a lawful arrest, Ivy falsely claimed in official reports that Plaintiff resisted arrest. (doc. 124 at 29; 125 -2 at 2-3; 126-1 at 1-7.)  Those reports were "the sole basis" of being charged with resisting arrest. (doc. 124 at 29.)  Plaintiff has provided competent summary judgment evidence to show that the violation of his constitutional right was objectively unreasonable given the clearly established law at the time of his arrest.

## VII. RECOMMENDATION

Defendants' motion for summary judgment on grounds of qualified immunity should be **GRANTED in part** and **DENIED in part**.  Plaintiff's claims for excessive force by Godwin and Kirby, and his malicious prosecution claim against Ross, Guthrie, Clement, Godwin, and Kirby, should be **DISMISSED with prejudice** on grounds of qualified immunity.  All other claims should remain pending for trial.

**SO RECOMMENDED on this 29th day of February, 2016.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

20

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21