**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MATTHEW B. ROBINSON,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 3:10-CV-2496-M** |
| | § | |
| **CITY OF GARLAND, TEXAS, et. al,** | § | |
| **Defendants.** | § | **Pretrial Management** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

By order of reference dated July 21, 2013 (doc. 56), this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *City of Garland's Motion for Summary Judgment*, filed January 19, 2016 (doc. 153), and *Defendant City of Garland's Objections to Plaintiff's Summary Judgment Evidence*, filed March 11, 2016 (doc. 168). Based on the relevant filings and applicable law, the motion to strike is **GRANTED in part** and **DENIED in part**, and the motion for summary judgment should be **GRANTED**.

## I. BACKGROUND

On December 8, 2010, Matthew B. Robinson (Plaintiff) filed suit against the City of Garland, Texas (Defendant) and Billy J. Ivy, Kevin Ross, Bryan Clement, John Guthrie, Joshua Kirby and Craig Godwin (Officers) of the Garland Police Department (GPD) under 42 U.S.C. § 1983. (doc. 1.) In addition to his claims against Officers for the alleged use of excessive force during his arrest, he also asserts a claim of municipal liability against Defendant for GPD's policy or custom of tolerating the use of excessive force by its police officers and covering up the use of excessive force with resisting arrest charges. (doc. 96 at 14, 21.)[1]

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiff was arrested on the night of July 24, 2010, and force was used during his arrest. (docs. 96 at 4; 155 at 13; 163-4 at 1-3.)  After complaining of loss of consciousness, Plaintiff was taken to the emergency room at Baylor Medical Center – Garland (Baylor), where he was prescribed pain medication for his head injuries and hand contusion, and then he was returned to Garland Jail. (docs. 96 at 7; 163-6 at 27-28.)  He was charged with resisting arrest, but the charge was ultimately dropped by the Dallas County District Attorney's Office.  (docs. 96 at 8; 163-2 at 18-19.)  Plaintiff did not file a complaint with GPD, but he contacted the Federal Bureau of Investigation (FBI) to report use of excessive force by several officers during the arrest.  (doc. 163-2 at 14-16.)  The FBI investigated the matter, but closed the case.  (*Id.* at 15.)  Neither GPD nor its Chief of Police, Mitch Bates, contacted the FBI to get a copy of its investigation.  (*Id.* at 21.)  Nor did GPD conduct an investigation on its own into Plaintiff's arrest.  (*Id.* at 4.)

Chief Bates has been GPD's Chief since September 16, 2003.  (doc. 154-1 at 26.)  His job duties include "implementation of Department policy with regard to personnel matters; oversight of suspension and disciplinary actions involving police officers and civilian employees; and interactions with the City Council and other city departments."  (*Id.*)  He is also responsible for "oversight and management of Departmental budgetary matters, [and] interaction with community leaders and organizations relating to the law enforcement needs and concerns of the community." (*Id.*)  Although he is subject to replacement by the City Manager and City Council of Garland, he is the "final word" on general orders and procedures within GPD.  (doc. 163-2 at 9-12.)

GPD's official use of force policy is found in General Order 10.22 and was last revised by Chief Bates on April 13, 2008.  (docs. 154-1 at 35; 163-2 at 6.)[2] It provides that when using non-

---

[2]  The policy is revised on an "ongoing basis."  (doc. 163-2 at 6.)

deadly force, "officers may use only that level of force that is objectively reasonable to bring an incident under control." (doc. 154-1 at 36.) Objective reasonableness is determined by "evaluat[ing] each situation in light of the known circumstances including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to the community or members of [the] department." (*Id.* at 35.) The policy also requires that a use of force report be completed anytime (1) deadly force is used, (2) a weapon is used, (3) a lateral vascular neck restraint is used, or (4) non-deadly force is used that results in physical injury other than simply physical pain. (*Id.*)

Every use of force report is reviewed under GPD's force review system, which requires review by an officer's lieutenant, captain, and assistant chief. (*Id.* at 27.) If any of the reviewers determine that a possible violation of the use of force policy occurred, the report is referred to Chief Bates for review. (*Id.* at 27-28.) Chief Bates can then refer the matter to Internal Affairs for investigation. (*Id.* at 28.) Additionally, any use of force complaint made by a person outside of GPD is assigned to Internal Affairs for investigation. (*Id.*) Upon completion of its investigation, Chief Bates reviews all reports prepared by Internal Affairs and imposes discipline on the officers involved, up to and including termination. (*Id.*)

Between 2007 and 2010, GPD employed 323 sworn police offices, with approximately 210 actually working in the field. (*Id.* at 26.) GPD has between 40 and 50 detectives who split their time between office work and time in the field. (*Id.*)

The City of Garland averages 11,000 arrests per year. (doc. 164-11 at 2.) Between 2007 and 2012, 410 arrestees were charged with resisting arrest:

| Year | Arrests with Resisting Arrest Charge | Average Yearly Arrests | Percentage of Yearly Arrests |
|---|---|---|---|
| 2007 | 119 | 11,000 | 1.08% |
| 2008 | 90 | 11,000 | 0.81% |
| 2009 | 67 | 11,000 | 0.61% |
| 2010 | 53 | 11,000 | 0.48% |
| 2011 | 37 | 11,000 | 0.34% |
| 2012 | 44 | 11,000 | 0.4% |
| Total: | 410 | 66,000 | 0.62% |

(*See id.*)  Seventy-four of the 329 arrestees charged with resisting arrest between 2007 and 2010 (22%) were transported to a hospital, either from the scene of the arrest or within 24 hours of book-in to the city jail.  (doc. 164-12 at 4.)[3]  Officers were an arresting or responding officer in 56 of the 74 arrests, and 45 of the 56 arrestees (80%) were transported to a hospital.  (doc. 164-12 at 3-4.)

| Officer | Criteria Offense Arrests | Transported to Hospital | Percentage Transported to Hospital |
|---|---|---|---|
| Ivy | 17 | 15 | 88% |
| Ross | 9 | 7 | 78% |
| Clement | 5 | 4 | 80% |
| Guthrie | 9 | 7 | 87.5% |
| Kirby | 16 | 12 | 75% |

---

[3] During this same time frame, 109 GPD officers were involved in a total of 112 arrests for "criteria offenses," which were defined by Plaintiff as (1) resisting arrest, (2) assault against a peace officer/public servant, or (3) aggravated assault against a peace officer/public servant.  (docs. 162 at 12; 164 at 12; 164-12 at 4.)

| Godwin | - | - | - |
|---|---|---|---|
| Total: | 56 | 45 | 80% |

(*See id.* at 4-6) (citing doc. 165).

The decision to transport someone to the hospital is not based solely on the severity of the injury. (*See* doc. 163-2 at 23.)  The decision "depends on the complaint from the person in the jail," the type of injury and its location, and what else the jail personnel are dealing with at the time.  (*Id.*) For example, three individuals were taken to the hospital for reasons not caused by GPD officers,[4] two were taken for minor injuries and quickly released,[5] and five were taken and admitted with more serious injuries, including gunshot wounds and dog bites.[6]  (doc. 165.)

No complaints for excessive force were made against Officers by other police officers between 2007 and 2010.  (doc. 164-12 5-6.)  Citizens initiated excessive force complaints against Officer Clement three times, Officer Kirby two times, and Officer Guthrie one time during that period.  (*Id.*)  All three officers were "exonerated" in all excessive force complaints by Internal Affairs.  (docs. 164-12 at 6; 165, CoG 906-07.)

---

[4] (*See* doc. 165, CoG 2442-45 ("Due to Juvenile #1's intoxicated state and officers not being able to contact anyone to assume custody of her, she was transported to Baylor of Garland Hospital for evaluation."); CoG 2446-48 ("[Arrestee] told medical staff that she had injured her head from striking the patrol units [sic] cage with her head."); CoG 2464-66 (Arrestee complained of neck pain and requested to go to the hospital, he was transported to Baylor, and "was seen by doctors who stated that they observed nothing wrong with him."); CoG 2508-10 (Arrestee transported to Baylor after booking when he caused some large boil like bumps on his arms to start leaking fluid)).

[5] (*See* doc. 165, GoG 02534-36 ("[Arrestee] was later taken to Baylor of Garland to be treated for the cut."); CoG 04128-04131 (Baylor found "minor injuries" on two arrestees who complaint of head and back pain)).

[6] (*See* doc. 165, CoG 2550-51, 3055-87, 3899-3931 (gunshot); CoG 3579-81, 3977-85, 4037-45 (dog bite); CoG 2586-89, 3184-3207, 4076-99 (dog bite); CoG 3687-3695 (gunshot); and 3434-95 (self-inflicted gunshot involving Sachse police officers only)).

At least six lawsuits have been brought against Defendant for the alleged use of excessive force by its police officers. *See Wright v. City of Garland*, No. 3:10–CV–1852–D, 2014 WL 1492356 (N.D. Tex. Apr. 16, 2014);[7] *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012); *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011), *cert. denied*, 132 S.Ct. 2433 (2012); *Duffey v. City of Garland*, No. 3:06-CV-1239-P (N.D. Tex.); *Ling v. Banda*, 262 F. App'x. 677 (5th Cir. 2011) (per curiam); *Allen v. Tuter*, No. 3-13-CV-0263-B (N.D. Tex.).[8] The plaintiffs' claims were dismissed on summary judgment in *Wright*, *Elizondo*, and *Rockwell*. *See Wright*, 2014 WL 1492356, at *11; *Elizondo*, 671 F.3d at 510; *Rockwell*, 664 F.3d at 993. In *Duffey*, the plaintiff survived the defendants' summary judgment motion, but abandoned the case before trial. *Duffey*, No. 3:06-CV-1239-P (docs. 67, 95). *Ling* and *Allen* involved incidents that occurred after Plaintiff's arrest, and the defendant officers were terminated for violations of GPD policy. *Ling*, 262 F. App'x. at 678; *Allen*s, Nos. 3-13-CV-0263-B (doc. 1), 3:14-cv-0115-B (doc. 1) (consolidated cases). In both *Rockwell* and *Elizondo*, the Fifth Circuit affirmed the grant of summary judgment in favor of the defendant, but a concurring opinion criticized Defendant's police officers.[9] *See Rockwell*, 664

---

[7] The City of Garland's motion to dismiss in that order was only granted in part, and Plaintiff was given leave to replead. *Wright*, 2014 WL 1492356. A motion to dismiss a second amended complaint was granted on November 13, 2014. *Wright v. City of Garland*, No. 3:10-CV-01852-D, 2014 WL 5878940, at *11 (N.D. Tex. Nov. 13, 2014).

[8] Plaintiff identifies there six cases in his complaint, and both parties address them in their summary judgment briefing. (*See* docs. 96 at 15; 155 at 8; 162 at 11.)

[9] In *Rockwell*, the concurring opinion "express[ed] disapproval of and disappointment with the officers' actions during the course of this sad incident." *Rockwell*, 664 F.3d at 996 (DeMoss, J., concurring). In *Elizondo*, the author of the concurring opinion in *Rockwell* "join[ed] the majority opinion in full because, under the current state of our law, the panel is correct in its legal judgments with respect to jurisdiction and liability. . . . [but wrote] separately to express [his] disapproval of and disappointment with the actions of the City of Garland police department." *Elizondo*, 671 F.3d at 511 (DeMoss, J., concurring).

F.3d at 996 (DeMoss, J., concurring); *Elizondo*, 671 F.3d at 511 (DeMoss, J., concurring). According to Chief Bates, the criticism resulted in additional officer training. (doc. 154-1 at 30.)

## II. EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

On January 19, 2016, Defendant moved for summary judgment. (doc. 153.) Plaintiff responded on February 26, 2016, and Defendant replied on March 11, 2016. (docs. 161, 167.) Defendant objects and moves to strike Plaintiff's Exhibits 13-20 and 24 in support of his response to its summary judgment motion. (doc. 168.)

### A.  Authentication

Defendant moves to strike Exhibits 13-20, which include the order of dismissal in Plaintiff's resisting arrest case, images allegedly extracted from surveillance video by the FBI, Plaintiff's medical response log from June 25, 2010, Plaintiff's handwritten statement that purports to have been submitted to the FBI, a FBI civil rights case initiation form that purports to have been based on Plaintiff's complaint, redacted excerpts from the FBI investigation, Lake Point Medical Records, and photos of Plaintiff at the jail under Fed. R. Evid. 901 as unauthentic. (*See* docs. 168 at 2-5; 164-1; 164-2; 164-3; 164-4; 164-5; 164-6; 164-7; 164-8.)

Under Rule 901(a), authentication or identification is a condition precedent to admissibility. Rule 901 does not require conclusive proof of authenticity; it merely requires some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). Some types of evidence are self-authenticating and require no extrinsic foundation for admission. *McIntosh v. Partridge*, 540 F.3d 315, 322 n.6 (5th Cir. 2008). When a document is not self-authenticating, however, "[a] document can be authenticated under Rule 901(b) by a witness who wrote it, signed it, used it, or

saw others do so." *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, No. MDL 1446, Civ.A. H–01–3624, 2003 WL 23316646, at *2 (S.D. Tex. Mar. 27, 2003) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir. 2002) (citations omitted)).

> When authenticity is challenged, the judge then makes a preliminary determination whether the evidence is sufficient "to allow a reasonable person to believe the evidence is what it purports to be," but the final determination as to what weight it will be given or whether it is disregarded is within the province of the jury or fact finder. *Alicea–Cardoza*, 132 F.3d at 4; 5 J.B. Weinstein's *Federal Practice Evidence* § 901.02 [4] (1999). In determining admissibility, the judge may consider circumstantial evidence, such as where the document is located, or indicia on the document providing evidence of authenticity. *See generally John Beaudette, Inc. v. Sentry Ins. A Mut. Co.* 94 F.Supp.2d 77, 89 (D.Mass.1999) (and citations therein).

*Id.*

Exhibits 13-20 are not self-authenticating under Rule 902.[10]  *See* Fed. R. Evid. 902.  Plaintiff submits a declaration by his attorney that states, "I am personally familiar with the documents produced in discovery in this lawsuit, the transcripts of depositions taken in this case, and documents obtained from the FBI. True and correct copies of those documents are submitted to this Court . . . as Exhibits to [Plaintiff's] Response." (doc. 163-1 at 1-3.)  The attorney does not purport to have personal knowledge of the evidence he seeks to authenticate, and he provides no other information

---

[10] Although Exhibit 13 appears to be a copy of a public document, it is not a certified copy nor does not it bear an official seal. (*See* doc. 164-1 at 1.)  Accordingly, it does not qualify as a self-authenticating document under Rule 901(1), (2), or (4).  *See, cf.  Zambito v. Blair*, 610 F.2d 1192, 1198 (4th Cir. 1979) (certified court order met the requirements for self-authentication of a domestic public documents under seal);  *United States v. Wilson*, 690 F.2d 1267, 1275 & n.2 (9th Cir. 1982) (judgment and court order was admitted as self-authenticating under Rule 902(4) since it was "certified on both sides").  Additionally, in its response to Defendant's motion to strike, Plaintiff does not argue that Exhibit 13 meets any of the criteria under Rule 902 for self-authentication. (*See* doc. 175 at 2-3.)  Instead, Plaintiff argues that "[t]his objection, like numerous others, is simply 'for argument's sake,' " that Defendant "provided the dismissal [order] to Plaintiff through Plaintiff's previous counsel," and that the document can easily be recovered from www.dallascounty.org. (doc. 175 at 2-3.)

regarding the production of the documents.  (*See id.*)

"An attorney's affidavit must meet the same standards as any other person's affidavit."  *In re Enron Corp.*, 2003 WL 23316646, at *2.  Courts "have repeatedly held that an affidavit does not meet this requirement simply because the affiant states that [his] conclusions are based on personal knowledge.  Rather, the affiant must provide the district court with sufficient information to allow the latter to conclude that the affiant's assertions are indeed based on such knowledge."  *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014); *see, e.g., Cramer v. NEC Corp. of America*, 496 F. App'x 461, 463-64 (5th Cir. 2012) (per curiam) (affirming the exclusion of summary judgment evidence because "[t]he discovery request was too broad to provide evidence of authenticity, the document itself bears no indication of authenticity, and [the] deposition testimony was noncommittal"); *see also R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 220 (5th Cir. 2005) (holding that exclusion of an exhibit was not an abuse of discretion absent indicia of authenticity within the exhibit itself or other evidence on the record tending to authenticate the exhibit).  Because Exhibits 13-20 are not self-authenticating, and Plaintiff has not provided sufficient evidence of authenticity to establish that they are true copies of what they purport to be, the declaration is insufficient.

Plaintiff argues that the order of dismissal in Plaintiff's resisting arrest case, Plaintiff's medical response log from June 25, 2010, and photos of Plaintiff at the jail were produced by Defendant in discovery, so "this Court may consider the averred evidence to be what it purports to be."  (doc. 175 at 1, 5.)  The Fifth Circuit has found that a document was properly authenticated where, in addition to being produced in discovery, the document (1) bore the producing party's signature, (2) the party did not claim that the document was not authentic or that her signature was

a forgery, and (3) the party affirmed the truth of the facts contained in the produced record in an opposition to summary judgment. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998). Other federal district courts within the Fifth Circuit have found, however, "[t]hat a document was produced in discovery by the opposing party, *alone*, is not conclusive as to its authenticity." *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, No. Civ. A. H-13-3046, 2016 WL 1387907, at *3 (S.D. Tex. Apr. 8, 2016) (emphasis added) (citing *R.R. Mgmt. Co., L.L.C.*, 428 F.3d at 219-20; *see Elwakin v. Target Media Partners Operating Co.*, LLC, 901 F. Supp. 2d 730, 742 (E.D. La. 2012)).[11]

In this case, Plaintiff relies solely on Defendant's production of the court order and jail documents and photos for authentication. (*See* doc. 175 at 1-8.) Because the declaration alone is insufficient to authenticate the document and Plaintiff does not provide any other support for authentication, Defendant's objection to these exhibits is sustained.[12] Accordingly, the motion to strike Exhibits 13-20 is granted.[13]

## B.    **Attorney Declaration**

Defendant next moves to strike Exhibit 24, a declaration prepared by one of Plaintiff's attorneys under Rule 702. (doc. 168 at 5-10.) The declaration states that she reviewed over 3,200

---

[11] The authenticity requirement under Fed. R. Evid. 901 is different from the business records exception to the hearsay rule under Fed. R. Evid. 801(d)(2)(A), which states that "documents produced in response to discovery requests are admissible because they are self-authenticating and constitute the admission of a party opponent under Rule 801(d)(2)(A)." *BP Expl. & Prod. Inc.*, 2016 WL 1387907, at *3 & n.8 (citing Fed. R. Evid. 801(d)(2)(A) and cases).

[12] Because Defendant's authenticity objection is granted, it is unnecessary to consider its other objections.

[13] Even if the exhibits were considered, the recommendation for disposition of the summary judgment motion would remain the same.

pages of documents produced by Defendant in discovery, compiled a chart of all arrests by arrest number, organized the arrests chronologically, listed arresting and responding officers and criteria offenses, and grouped incidents based on provided information.  (doc. 164-12 at 1-3.)  She then summarized the results in a three-page document that cites to Defendant's Bates-marked documents, which have been provided under seal as Exhibit 25.  (docs. 164-12 at 4-6; 165-1.)

Plaintiff contends that he has not presented the declaration as expert testimony of scientific, technical, or other specialized knowledge to help the trier of fact to understand the evidence or to determine a fact in issue, *see* Fed. R. Evid. 702,[14] but rather, as a summary of evidence under Fed. R. Evid. 1006.  (doc. 164-12 at 1.)  Under Rule 1006:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006; *accord Powell v. Penhollow*, 260 F. App'x 683, 689 (5th Cir. 2007) (citing *Hackett v. Housing Auth.*, 750 F.2d 1308, 1312 (5th Cir. 1985)).  Because the declaration merely counts and summarizes a voluminous amount of documents produced by Defendant that cannot conveniently be examined, Exhibit 24 constitutes a summary under Rule 1006.  The motion to strike

---

[14] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Exhibit 24 is denied.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.' " *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c) (1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither

conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.[15]

## IV. SECTION 1983

Defendant moves for summary judgment on Plaintiff's municipal liability claim under 42 U.S.C. § 1983 on grounds that it is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  (doc. 155 at 6.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).  "Under the decisions of the Supreme Court and

---

[15] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).  Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]."  *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

[the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *accord Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

## A.   Violation of Constitutional Rights

Defendant contends that it is entitled to summary judgment because Plaintiff's summary judgment evidence fails to establish that Officers violated his constitutional rights.  (doc. 155 at 6, 12 & n.2.)  It argues there can be no municipal liability without any underlying violation of a constitutional right related to the officers' use of force.  (*Id.* at 12 & n.2)

The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).  To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Goodman v. Harris County*, 571 F.3d 388, 397 (5th Cir. 2009); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

A violation under the Fourth Amendment is dependant on whether the alleged use of force

was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

To meet its initial summary judgment burden, Defendant relies on Officers' motion for summary judgment. (*Id*. at 12 n.2.) The Court dismissed Plaintiff's claims against Detective Godwin and Officer Kirby but found that a genuine issue of material fact existed as to his excessive force claims against Officers Ivy, Ross, Guthrie, and Clement, which remain pending. (docs. 166 at 20; 174 at 1.) There has not been a finding that there was no constitutional violation by these officers.

In addition, Plaintiff has proffered competent summary judgment evidence that he immediately complied with the arresting officers' commands, he was not resisting arrest when the officers began to kick and punch him, and he was injured. (docs. 163-6 at 6-19, 23-225; 163-7 at 6-10.) Based on Plaintiff's summary judgment evidence, a reasonable jury could find that he was

15

compliant and nonresistant during the arrest so that no force was needed, and that the officers violated his Fourth Amendment rights by using excessive force against him. *See Graham*, 490 U.S. at 396. His evidence is sufficient to create a genuine issue of material fact regarding whether his Fourth Amendment rights were violated during the arrest, and Defendant's motion for summary judgment should be denied on this ground.

**B.    Policymaker**

Defendant contends that it is entitled to summary judgment because no evidence exists that the Garland City Council, as the City of Garland's official policymaker, had "at very least, constructive knowledge of the purported policy or custom." (doc. 155 at 18.)

A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). For municipal liability, a plaintiff must show the policy was promulgated by the municipality's policymaker. *Id.* There is no "de facto" final policymaking authority. *Id.* at 848 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)); *accord Gros v. City of Grand Prairie*, 181 F.3d 613, 616 n.2 (5th Cir. 1999). "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'" *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam)). "He or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

The parties appear to agree that the City Council is the policymaker for Defendant.[16]  (*See* docs. 155 at 18; 162 at 18; 167 at 7.)  Plaintiff argues that the Garland City Council impliedly delegated its authority to Chief Bates, so his actions can establish an official policy or custom for GPD, and he proffers summary judgment evidence regarding Chief Bates' role and authority.  (doc. 162 at 17-25) (citing *Zarnow*, 614 F.3d at 166); doc. 163-2 at 9-12.)  Defendant argues the summary judgment evidence establishes that "the City Council, not the Chief of Police, is the final policy-maker in the City."  (doc. 167 at 7); *see Zarnow*, 614 F.3d at 168 ("The City insists that the City Manager and City Council have the relevant authority over the police department.").  It argues, "if the City Council does not like the decisions of the Chief in law enforcement matters, they can replace the Chief, as he is employed at the will of the Council."  (doc. 167 at 7.)

In *Zarnow*, "[a plaintiff] insist[ed] that [the chief of police] acted as the City's policymaker and was actively aware of the errant plain view policy used in the seizure of items from her home." *Zarnow,* 614 F.3d at 167.  The city contended that the chief of police was a "decisionmaker," but not an official policymaker for the city.  *Id.*  A city's governing body may delegate policymaking authority (1) by express statement or formal action, or (2) "it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role."  *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985).  The Fifth Circuit noted:

The nature of the administrative oversight is important in determining "policymaker"

---

[16] The identity of the policymaker official is a question of state law and not of fact. *Praprotnik*, 485 U.S. at 124.  "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts may need to consult 'local ordinances and regulations.' "  *Groden*, 2016 WL 3361186, at *3 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett*, 7 F.3d at 1245 (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

status. An official may be a policymaker even if a separate governing body retains some powers. *See Bennett*, 728 F.2d at 769. *An official may be termed a "policymaker" even if the municipality retains "the prerogative of the purse and final legal control by which it may limit or revoke the authority of the official." Id.* Further, the subject matter of administrative review must be precise in order to attach the presumption against policymaking. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir.2001). "The mere existence of oversight, however, is not enough; the oversight must pertain to the area of authority in question." *Id*. (citation omitted).

*Zarnow*, 614 F.3d at 168 (emphasis added). "Still, we have maintained that 'neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability. There must be more.'" *Id.* (quoting *Bolton*, 541 F.3d at 551). In relying on the chief of police's authority to create internal policy and general orders regarding the policy (even if not exercised), the Fifth Circuit found that the city impliedly delegated its policymaking authority to the chief of police. *Id.*

Here, Plaintiff relies on Chief Bates's ability to enter general orders and to set and modify GPD policies "in lieu of the Garland City Council." (*See* doc. 162 at 18.) He has proffered competent summary judgment evidence that his duties include "implementation of Department policy with regard to personnel matters; oversight of suspension and disciplinary actions involving police officers and civilian employees; and interactions with the City Council and other city departments." (doc. 154-1 at 26.) He is also responsible for "oversight and management of Departmental budgetary matters, interaction with community leaders and organizations relating to the law enforcement needs and concerns of the community." (*Id*.) Although he is subject to replacement by the City Manager and Garland City Council, he is the "final word" on general orders and procedures within GPD. (doc. 163-2 at 9-12.) Additionally,"[he is] not required to get approval from the City Council to issue a general order or some procedure within the police department" before issuing general orders. (doc. 163-2 at 6, 11) ("They are my orders, the general orders, that

apply to all officers.").

Based on Plaintiff's summary judgment evidence, a reasonable jury could find that the Garland City Council delegated its policymaking authority to Chief Bates. *See Zarnow*, 614 F.3d at 166. His evidence is sufficient to create a genuine issue of material fact regarding the identity of the policymaker who was required to have knowledge of the purported policy or custom, so Defendant's motion for summary judgment should be denied on this ground.

## C.     Official Policy or Custom

Defendant next contends that it is entitled to summary judgment because there is no evidence an official policy or custom of tolerating excessive force or covering up the use of excessive force with resisting arrest charges. (doc. 155 at 6, 12-16.)

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster*, 735 F.2d at 841; *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A single constitutional violation is ordinarily insufficient to show a customary municipal policy, however. *Piotrowski*, 237 F.3d at 581 (citing *Webster*, 735 F.2d at 851). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Id.* (quoting *Bennett*, 728 F.2d at 768 n.3). "If actions of city

19

employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842.

Here, the parties address two distinct policies, i.e., (1) tolerating the use of excessive force and (2) covering up the use of excessive force with resisting arrest charges.[17]

### 1. Tolerating excessive force

To meet its initial summary judgment burden on the alleged policy of tolerating the use of excessive force, Defendant points to its official use of force policy, which limits use of force to "only that level of force that is objectively reasonable to bring an incident under control." (docs. 154-1 at 36; 155 at 12-15.)   In identifying GDP's official policy, Defendant has met its initial

---

[17] The parties appear to disagree about the number of policies alleged in this case.  At the beginning and end of the municipal liability section of Plaintiff's complaint, he alleges that "GPD had a policy or custom of tolerating the use of excessive force by its police officers."  (doc. 96 at 14, 21.)  In the middle of the section, however, he also alleges that "[t]he above-referenced widespread abuse by GPD officers establishes a pervasive, department-wide policy or custom of allowing, promoting, tolerating, and ratifying GPD officers' conduct to use levels of force that necessitate medical treatment against arrestees and then *claiming resisting arrest in order to cover up the officers' unlawful actions*."  (*Id.* at 17) (emphasis added).  The parties' briefing treats the policies separately, so they are considered separately. (*See* docs. 155 at 12-16; 162 at 21, 24.)  Defendant's brief also addresses a failure to investigate policy.  (doc. 155 at 16-17.)  Plaintiff does not appear to allege a failure to investigate policy separate from the other two, however.  Plaintiff's complaint mentions Defendant's inadequacy of investigation within the context of its policy or custom of tolerating the use of excessive force.  (*See* doc. 96 at 21) ("Specifically, the GPD had a policy or custom of tolerating the use of excessive force by its police officers, *as demonstrated by* the participation of a group of police officers in Plaintiff's beating; the pattern of prior similar incidents of abusive police conduct described above; *the inadequacy of investigations into incidents of alleged excessive force described above*; the lack of discipline for incidents of excessive force described above; and the lack of supervision and reporting procedures to monitor the use of force by police officers.") (emphasis added).  His response identifies failure to investigate as part of tolerating the use of excessive force.  (*See* doc. 162 at 24.)  Accordingly, this policy is not addressed separately.

burden.  *See Celotex*, 477 U.S. at 325.   Accordingly, the burden shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact.

In response, Plaintiff proffered a summary of GPD arrest records from 2007 to 2010.  (docs. 162 at 21; 164-12 at 1-6.)  It describes the numbers of arrests for specific criteria offenses, excessive force complaints against Officers, and Internal Affairs investigations initiated against Officers.  (doc. 164-12 at 1-6.)

Defendant argues that "a bare list of prior incidents cannot show a pattern sufficient to survive summary judgment."   (doc. 155 at 15) (citing *Oporto v. City of El Paso*, No. EP–10–CV–110–KC, 2012 WL 2191697, at *5 (W.D. Tex. June 14, 2012)).   In *Oporto*, the plaintiffs argued that the City of El Paso had a policy of using excessive force during arrests or investigatory stops.  *Oporto*, 2012 WL 2191697, at *4.  The district court found that the plaintiffs "submitted no evidence of a pattern" and relied on only a "bare list of prior incidents," which is insufficient to sustain a § 1983 claim against a city on summary judgment.  *Id.* at *5-6 (citing *Peterson*, 588 F.3d at 851).

Similarly, in *Peterson*, the plaintiff alleged that the City of Fort Worth had a policy of permitting excessive force in making arrests.  *Peterson*, 588 F.3d at 850.  To establish municipal liability, the plaintiff pointed to 27 complaints of excessive force over four years.  *Id.* at 852.  Four of the complaints were sustained.  *Id.*  The Fifth Circuit found that the plaintiff had produced insufficient evidence and affirmed the dismissal by the trial court on summary judgment.  *Id.*  It did note, however, that:

> [t]he incidents allege use of force that, if true, would be emphatically excessive. Nevertheless, assuming their truth, the incidents do not, on the basis of this record, tell us that the City maintained an official policy of condoning excessive force. *The failure of the evidence is that the plaintiffs have failed to provide context that would*

> *show a pattern of establishing a municipal policy*. . . . Given the department's size [of 67,000, which the court had to lookup online], and absent any evidence of its total number of arrests during the same time period, 27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct. To hold otherwise would be effectively to hold the City liable on the theory of respondeat superior, which is expressly prohibited by *Monell*. *See* 436 U.S. at 694, 98 S.Ct. 2018.

*Id*. at 851-52 (emphasis added).

Here, Plaintiff has presented summary judgment evidence that GPD employed 323 sworn police officers, with approximately 210 actually working in the field between 2007 and 2010; that the City of Garland averages 11,000 arrests per year; that 329 arrestees were charged with resisting arrest between 2007 and 2010;[18] and that Officers were "exonerated" of all excessive force complaints filed against them by the public.  (docs. 162 at 21; 163-2 at 26; 164-11 at 2; 165, CoG 906-07.)  Of the 56 persons arrested by Officers for resisting arrest between 2007 and 2010, 80% were taken to the hospital, as were 88% of Officer Ivy's criteria offense arrestees and 87.5% of Officer Guthrie's criteria offense arrestees.  (*See id.* at 13, 19-20) (citing docs. 164-12 at 4-6; 165).  Additionally, 109 out of 210 GPD officers who actually work in the field were involved as either an arresting or responding officer to a criteria offense arrest that involved an arrestee who was taken to the hospital.  (docs. 162 at 12; 164 at 12; 164-12 at 4.)  Plaintiff argues:

> The *unusual and disproportionate number of injuries occurring when Defendant officers are involved* establishes a pattern or practice of the tolerance of excessive force . . . . Similarly, the officers' actions themselves, acting in concert to beat Plaintiff, is evidence that they did not fear they would be reprimanded.

(doc. 162 at 24) (emphasis added).

---

[18] Some of the summary judgment evidence provided by Plaintiff focuses on 2007 to 2010, while other evidence focuses on 2007 to 2012.  (*See* doc. 164-11 at 2; 164-12 at 4-5.)

Although Plaintiff has identified offenses that resulted in an arrestee being transported to a hospital *for some reason*, he does not identify the reason or the extent of the injuries identified by the doctors (if any).  (*See id.*)  As noted, the decision to take an arrestee to the hospital "depends on the complaint from the person in the jail," the type of injury and its location, and what else the jail personnel are dealing with at the time.  (*See* doc. 163-2 at 23.)  Because "[a] pattern requires similarity and specificity," the fact that an arrestee was transported to the hospital *alone* does not provide sufficient context to establish a policy or custom of tolerating the use of excessive force. *See Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.")).

Plaintiff has not shown that all the individuals transported to a hospital were injured as a result of the force used during arrest.  Some individuals were taken to the hospital by GPD for unrelated reasons, such as juvenile intoxication.  (*See, e.g.,* doc. 165, CoG 2442-45 ("Due to Juvenile #1's intoxicated state and officers not being able to contact anyone to assume custody of her, she was transported to Baylor of Garland Hospital for evaluation."); *see also* CoG 2508-10 (Arrestee transported to Baylor after booking when he caused some large boil like bumps on his arms to start leaking fluid)).  Plaintiff relies on the fact that some arrestees were transported to a hospital *for some reason* to meet his summary judgment burden, but he does not distinguish based on the reasons or whether they are related to an officer's use of force.  *See Ragas*, 136 F.3d at 458 ("The party opposing summary judgment is required to identify specific evidence in the record and to *articulate the precise manner in which that evidence supports his or her claim*.") (emphases added).  Without more, Plaintiff's summary judgment evidence amounts to a bare list, and he has

23

not met his burden.  *See Peterson*, 588 F.3d at 852 ("To hold otherwise would be effectively to hold

the City liable on the theory of *respondeat superior*, which is expressly prohibited by *Monell*.").

Accordingly, Plaintiff has failed to provide sufficient evidence to create a genuine issue of material

fact regarding a policy or custom of tolerating the use of excessive force.

### 2.    Cover up

To meet its initial summary judgment burden on the alleged policy of covering up the use

of excessive force with resisting arrest charges, Defendant points to the absence of evidence of a

pattern of similar incidents in which "citizens allege an excessive use of force and where the

involved officers falsely charged the citizens with resisting arrest." (doc. 155 at 15-16.)  Defendant

has met its initial burden.  *See Celotex*, 477 U.S. at 325.  Accordingly, the burden shifts to Plaintiff

to identify evidence in the record that raises a genuine issue of material fact.

In response, Plaintiff argues:

> The unusual and disproportionate number of injuries occurring when Defendant
> officers are involved establishes . . . the *existence of a policy of allowing these*
> *officers to cover their excessive use of force with false charges.*  Similarly, the
> officers' actions themselves, acting in concert to beat Plaintiff, is evidence that they
> did not fear they would be reprimanded.

(doc. 162 at 24) (emphasis added).  He provides evidence of the number of arrests that occurred

between 2007 and 2012 with a charge for resisting arrest.  According to Plaintiff's summary

judgment evidence, 410 arrests out of approximately 66,000 arrests (0.62%) occurred over six years.

(doc. 164-11 at 2.)  From 2007 to 2012, the percentage of yearly arrests with resisting arrest charges

were 1.08% (119 arrests), 0.81% (90 arrests), 0.61% (67 arrests), 0.48% (53 arrests), 0.34% (37

arrests), and 0.4% (44 arrests).  (*See id.*)  Additionally, 74 of the 329 arrestees charged with resisting

arrest between 2007 and 2010 (22%) were transported to a hospital either from the scene of the

arrest or within 24 hours of book-in to the city jail.  (doc. 164-12 at 4.)

Defendant argues, "To demonstrate a municipal custom under Section 1983, a plaintiff must at least show a pattern of similar incidents in which citizens were injured or endangered by police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force."  (doc. 167 at 13) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).  To demonstrate a governmental policy or custom under § 1983, a plaintiff must show "at least a pattern of *similar incidents in which the citizens were injured*."  *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (citation omitted and emphasis in original); *accord Fraire*, 957 F.2d at 1278 (citing *Languirand*, 717 F.2d at 227-28).  Only if a plaintiff demonstrates that his or her injury resulted from a "permanent and well settled" practice may liability attach for injury resulting from a local government custom.  *Praprotnik*, 485 U.S. at 127 (citation omitted); *accord Languirand*, 717 F.2d at 223.

Here, Plaintiff relies on GDP police officers' alleged use of false charges to cover their alleged use of excessive force.  (doc. 162 at 24.)  Specifically, he points to 410 out of 66,000 arrests, or 0.62% of arrests over a six-year period.  In all but one year, the number of arrests with charges of resisting arrest were less than 1% of the average yearly total, and the last three years were less than 0.5%.  (*See* doc. 164-11 at 2.)  Also, over the entire six-year period the total number was only 0.62% of the average yearly totals.  (*See id*.)  As with Plaintiff's alleged policy of tolerating the use of excessive force, however, his summary and summary judgment response do not identify the reason for transport to the hospital and attempts to demonstrate a pattern based on transport to a hospital alone.  (*See* docs. 162 at 21; 164-12 at 4-6.)  He states, "Of the 112 'arrests resulting in hospitalization', 74 of those involved Resisting Arrest specifically."  (doc. 164-12 at 4.)  He fails

25

to identify the reasons, however.  (*See id.*)  Without information showing the reasons for transportation to a hospital, he has failed to demonstrate a pattern of similar incident." *Fraire*, 957 F.2d at 1278; *see also Ragas*, 136 F.3d at 458 ("The party opposing summary judgment is required to identify specific evidence in the record and to *articulate the precise manner in which that evidence supports his or her claim*.") (emphases added).

Accordingly, he has failed to provide sufficient evidence to create a genuine issue of material fact regarding a policy or custom of covering up the use of excessive force with resisting arrest charges.  Defendant's motion for summary judgment should therefore be granted on this basis.[19]

## V. RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**.[20]

---

[19] Because it has been recommended that Defendant's motion for summary judgment be granted, it is unnecessary to consider its remaining arguments.

[20] In its reply, Defendant presents new arguments regarding the policymaking authority of Chief Bates and *Heck v. Humphrey*.  (doc. 167 at 7, 16.)  The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion."  *See Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991).  Defendant did not seek leave to introduce new arguments in its reply. A movant is not ordinarily permitted to make new arguments in a reply because such actions deprive the non-movant of a meaningful opportunity to respond.  *See id.*  Because Plaintiff did not have a meaningful opportunity to respond to the new arguments, they are not considered.  *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03–cv–0330–G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *see, e.g., Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14–CV–3398–L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *adopted by* No. 3:14–CV–3398–L, 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).

**SO RECOMMENDED on this 17th day of August, 2016.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE